UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARTIN G. CRAIN

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

CIVIL ACTION

NUMBER 14-12-SCR

**RULING ON SOCIAL SECURITY APPEAL**

Plaintiff Martin G. Crain brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner") denying his application for disability insurance income benefits.

Based on the standard of judicial review under § 405(g), a careful review of the entire administrative record as a whole, and the analysis that follows, the Commissioner's decision is reversed.

**Standard of Review**

Under § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial evidence supports the Commissioner's findings, they are conclusive

and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Judicial review under § 405(g) does not require that all of the evidence support the ALJ's findings. Even if substantial evidence supports the claimant's position this is not a ground for reversal. As long as the ALJ's finding or decision is supported by substantial evidence in the record as a whole it must be affirmed.[1]

In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for

---

[1] *Carroll v. Dept. Health, Ed. and Welfare*, 470 F.2d 252, 254, n. 4 (5th Cir. 1972) (as long as there is substantial evidence to support the Commissioner's determination, the quantity of evidence submitted by the claimant is irrelevant in terms of judicial review); *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001); *Palimino v. Barnhart*, 515 F.Supp.2d 705, 710 (W.D.Tex. 2007), citing, *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)(when record as a whole indicates a mixed collection of evidence regarding plaintiff's impairments and their impact, Commissioner's decision is upheld when there is substantial evidence to support it).

that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

Therefore, on judicial review the Commissioner's decision is granted great deference, and the decision will not be disturbed unless the court cannot find substantial evidence in the record to support it, or the court finds an error of law was made. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. § 404.1505. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. § 404.1520. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2)

the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work. If the claimant shows at step four that he is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra. If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

**Background and Claims of Error**

Plaintiff was 46 years of age at the time of the administrative law judge's ("ALJ") decision.[2] Plaintiff graduated from high school and his past relevant work consisted of work at large retail stores as a meat cutter and fresh area supervisor. In his application for disability benefits the plaintiff claimed he

---

[2] Plaintiff's age placed him in the category of a person of a younger person. 20 C.F.R. § 404.1563(c).

became disabled and no longer able to work as of September 15, 2010 because of pain and limitations resulting from neck surgery and a failed back surgery. AR pp. 61-62, 101-04, 120-22, 132-38, 142-43.

After his application was denied at the initial administrative levels of review, the plaintiff requested an ALJ hearing. The hearing was held, and after it the ALJ issued an unfavorable decision, finding at the fifth step that the plaintiff was not disabled. AR pp. 33-59. The ALJ found at step two of the disability analysis that the plaintiff had the following combination of severe impairments - failed back syndrome, past laminectomy with history of lower lumbosacral pain and status post cervical surgery. At the third step the ALJ concluded that the plaintiff's spinal impairments did not meet or medically equal the severity of one of the listed musculoskeletal impairments found in 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, Listing 1.00. AR pp. 35-36.

The ALJ then evaluated the plaintiff's residual functional capacity ("RFC") to determine whether, despite his severe impairments, the plaintiff was able to do any of his past relevant work or other work in the national economy.[3] The ALJ found the plaintiff retained the following RFC:

---

[3] Residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five. 20 C.F.R. § 404.1545.

5

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to stand and walk 4 hours which is a restricted level of light. The claimant ambulates with a cane. The claimant is able to perform all posturals occasionally; manipulative limitations would be frequent bilaterally; no visual limitations; no communication limitations; and no environmental limitations. Also, the claimant has pain in his hands.

Given this RFC, and based on the hearing testimony of the vocational expert, the ALJ concluded that the plaintiff would be not be able to perform his past relevant work as a meat cutter or large retail store supervisor. However, based on the plaintiff's age, educational background, work experience and testimony from the vocational expert, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform - mail clerk, routing clerk and school bus monitor.[4]  AR pp. 36-40, 53-57.  Therefore, the ALJ found the plaintiff is not disabled and is not entitled to disability benefits.[5]

Plaintiff asserted that the ALJ committed the following errors that require reversal of the ALJ's decision: (1) at step three the

---

[4] Plaintiff exhausted his administrative remedies before filing this action for judicial review. The ALJ's decision is the Commissioner's final decision for purposes of judicial review.

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

6

ALJ erred in finding that his impairments did not meet or equal the requirements of Listing 1.04A (Disorders of the spine); (2) the ALJ erred by failing to evaluate his mental impairments of depression and anxiety; and (3) the ALJ failed to consider and weigh the opinions of treating physician, Dr. John E. Clark, according to the standards set forth in *Newton v. Apfel*,[6] and the applicable regulations.

## Analysis

Based on review of the record as a whole, the court finds that the ALJ committed legal error by failing to consider and analyze Dr. Clark's opinions in accordance with the applicable law and regulations.

The legal principles governing this issue are well-established. Although the opinion and diagnosis of a treating physician should generally be given considerable weight in determining disability, a treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. The ALJ may discount the weight of a treating doctor's medical opinion when it is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton*, 209 F.3d at 455-56. An ALJ is free to reject the medical opinion of any physician when

---

[6] 209 F.3d at 453.

the evidence supports a contrary conclusion. *Bradley*, 809 F.2d at 1057.

However, when the ALJ finds a treating physician's medical opinion is not entitled to controlling weight, certain factors should be considered in deciding how much weight to give the opinion. These factors include: (1) the length and frequency of treatment; (2) nature and extent of the treatment relationship; (3) the extent the opinion is supported by medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; and, (5) the treating physician's specialization and other factors. 20 C.F.R. § 404.1527(c)(1)-(6); SSR 96-2p;[7] *Newton*, 209 F.3d at 456. In *Newton*, the Fifth Circuit held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views" under the criteria set forth in the regulations.[8] Nevertheless, the ALJ need not consider each of the factors where there is competing first-hand medical evidence and the ALJ finds that one doctor's opinion is more well-founded than another. *Id.,* at 458; *Walker v. Barnhart*,

---

[7] TITLES II AND XVI: GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, 1996 WL 374188.

[8] In *Newton* the court cited 20 C.F.R. § 404.1527(d)(2), however, the applicable regulation is now found at 20 C.F.R. § 404.1527(c)(2).

158 Fed.Appx. 534 (5th Cir. 2005).

A medical source's opinions on some issues are not medical opinions, but are instead "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e. that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d). Thus, a treating source's statement or opinion that the claimant is "disabled" or "unable to work," is not a medical opinion, but a legal conclusion on an issue reserved to the Commissioner. The factors set out in the regulations apply only to medical opinions, not opinions reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1)-(3); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

The record establishes, and the Commissioner does not dispute, that Dr. Clark is the plaintiff's treating physician.[9] As the ALJ stated in his decision, the medical evidence from Dr. Clark shows that the plaintiff has a long history of both cervical and lumbar pain subsequent to anterior cervical discectomy and fusion along with two lumbar surgeries that included a bone graft and hardware removal after a bone infection. AR p. 36. Dr. Clark's records and reports indicate that he treated the plaintiff on a regular and

---

[9] The ALJ referred to Dr. Clark as the "claimant's treating physician." AR p. 36. Dr. Clark is board certified in physical medicine and rehabilitation. His medical practice is in the areas of spine and sports medicine.

continuing basis since 2002. Treatment notes of the plaintiff's monthly follow-up visits cover the period from September 9, 2009 through May 2012.[10] The records as a whole show that the plaintiff suffers from a cervical and lumbar spine condition with a history of chronic pain that was not remedied by surgery and other treatment. Therefore, the plaintiff's treatment consisted of "palliative care with supportive efforts," in the form of a drug regimen consisting of Methadone, Roxicodone and Adderall.[11]

In addition to his treatment records, Dr. Clark provided two assessments of the plaintiff's physical residual functional capacity. The first one was in November 2010 and the second was completed December 12, 2011.[12] In the 2010 report, Dr. Clark summarized and described the plaintiff's diagnoses, prognosis, symptoms, clinical findings and objective signs, treatment, and noted the consistency of the plaintiff's impairments with the reported symptoms and functional limitations. AR pp. 234-35. Dr. Clark reported the plaintiff would have the following limitations during a normal eight hour workday: (1) frequent or constant pain severe enough to interfere with attention and concentration needed to perform even simple work tasks; (2) the ability to sit or stand

---

[10] AR pp. 16, 27, 176-224, 234-37, 241-48, 261-65, 269-72.

[11] See, e.g., AR pp. 177, 181, 190, 199.

[12] AR pp. 234-37 (Physical Residual Functional Capacity Questionnaire, November 16, 2010); AR pp. 269-72 (Physical Residual Functional Capacity Questionnaire, December 12, 2011).

for only 15 to 20 minutes at a time before needing to get up, sit down or walk around; (3) the ability to stand/walk for less than two hours, and sit for about two hours; (4) the ability to be able to shift positions at will and take unscheduled breaks; (5) the need to use a cane/assistive device during flare-ups; (6) can never lift and carry over ten pounds, but can lift and carry less than ten pounds occasionally, and ten pounds rarely; (7) can look down or up, and turn head right or left only occasionally; (8) can never stoop or climb ladders and can rarely twist, squat and climb stairs; and, (9) likely to be absent from work more than four days a month as a result of his impairments. AR pp. 235-37. In December 2011 Dr. Clark's reported similar findings on the plaintiff's restrictions and limitations due to post-surgical changes, continuing degenerative disc disease of the cervical and lumbar spine, and chronic pain. AR pp. 269-72. However, Dr. Clark found that the plaintiff would be even more restricted in some areas. Plaintiff could never twist. Plaintiff's ability to both sit, or stand/walk was now less than two hours a day, and the plaintiff would have to get up and walk around for about ten minutes, approximately every 20 minutes. Plaintiff's ability to lift and carry was limited to less than ten pounds occasionally.

  The ALJ addressed the records and reports of Dr. Clark in his written decision. The ALJ specifically noted and summarized both physical RFC assessments completed by Dr. Clark. After doing so,

the ALJ simply stated that he had "considered this opinion, however, the claimant testified at the hearing he can lift up to 20 pounds, and stand and sit 15 to 20 minutes." AR p. 38.  The ALJ did not note any evidence in the record, other than this testimony, that he believed contradicted Dr. Clark's medical opinions related to the plaintiff's condition and limitations.  Nor did the ALJ indicate whether he gave Dr. Clark's reports and medical opinions significant, little or no weight.

The only other report of a physical examination of the plaintiff and an assessment of his functional abilities is the consultative examination performed by Dr. Barnabas Fote on May 28, 2011.[13]  AR pp. 225-27.  The ALJ cited several of Dr. Fote's physical examination findings.  Plaintiff was able to walk into the room and get on the exam table without assistance or an assistive device; plaintiff walked with a limp; his neck exam was normal, and there was no evidence of lumbar muscle spasm or tenderness.[14]  As

---

[13] The record includes a report of a September 24, 2010 office visit and examination by Dr. Michael A. Braxton.  AR pp. 251-57.  The report did not contain any assessment of the plaintiff's ability to perform work-related activities.  The ALJ did not specifically discuss or evaluate this evidence in his decision.  Similarly, the record includes some medical records from primary care physician Dr. Gerald M. Barber.  Because the plaintiff provided them with the request for review to the Appeals Council, the ALJ could not have considered these records. AR pp. 13, 288-300.

[14] Dr. Fote also completed a range of motion chart, which indicated limitations in range of motion of the cervical and lumbar spine.  AR p. 228.  The ALJ did not mention this part of Dr. Fote's report.

the ALJ noted in his decision, Dr. Fote concluded that the plaintiff did not need an assistive device, and "should be able to sit and stand, pull and push as tolerated," and should also be able to kneel, crawl, crouch, reach, grasp, handle and finger objects. AR pp. 37, 227.  With regard to his consideration of Dr. Fote's assessment, the ALJ simply stated that he had "considered this opinion, but finds the claimant has limitations based on his medical records."  AR p. 37.  The ALJ did not specifically state what weight, if any, he gave to Dr. Fote's findings or opinions.[15]

Based on this review of the medical reports and the record as a whole, Dr. Fote's report does constitute first-hand medical evidence - he examined the plaintiff to complete his consultive examination.  However, Dr. Fote's assessment does not contradict the assessment and specific conclusions of Dr. Clark.  It simply states Dr. Fote's unexplained belief that the plaintiff should be able to do certain things, such as, sit, stand, pull, kneel and reach, "as tolerated."  Dr. Fote's report not only fails to controvert Dr. Clark's opinions, it provides no actual information or opinions on the limitations caused by the plaintiff's severe

---

[15] The record includes an assessment of the plaintiff's RFC by a non-examining state agency medical consultant, Dr. Timothy Honigman. AR pp. 64-67, 231. This medical consultant essentially found the plaintiff could do a narrower range of light work, because of postural limitations and limitations on the amount of standing the plaintiff could do in an eight hour workday. The ALJ did not mention Dr. Honigman's assessment in his decision. It is not clear whether the ALJ considered it or, if he did, what weight he gave it, if any, in determining the plaintiff's RFC.

spinal impairments and chronic pain.

Without reliable medical evidence from a treating or examining physician that controverts Dr. Clark's opinions and findings, the ALJ rejected and/or discredited Dr. Clark's opinions without performing the detailed analysis required by *Newton* and the regulations.  There is nothing in the ALJ's decision that even resembles the type of analysis called for in *Newton* - consideration of factors such as Dr. Clark's specialization, the length and frequency of his treatment, the nature and extent of his treatment relationship with the plaintiff, the extent his opinion is supported by the medical signs and laboratory findings, and the consistency of his opinions with the record as a whole.

The court also notes that after summarizing Dr. Clark's opinions on the plaintiff's functional abilities, the ALJ simply referred to the plaintiff's testimony about how much weight he could lift and how long he could stand.  AR p. 38.  This is the only apparent basis on which the ALJ discredited Dr. Clark's opinions.  However, the plaintiff did <u>not</u> testify that he could lift up to 20 pounds.  The ALJ asked, "And what limitations did your doctor place on you as far as picking up weight?"  Plaintiff replied, "No more than 20 pounds."  AR p. 48.  The few lines of testimony from the plaintiff about his limitations do not constitute the detailed analysis required by *Newton*.  Nor does his testimony constitute substantial evidence to support the ALJ's decision to reject or discredit the comprehensive assessments of

14

the plaintiff's RFC provided by Dr. Clark.

## Conclusion

In summary, the ALJ's perfunctory treatment of Dr. Clark's medical opinions constitute reversible error.  This error requires remand so that the doctor's reports and opinions, and other evidence relevant to the plaintiff's disability claim, can be considered and analyzed in accordance with the proper legal standards as set forth in *Newton* and the applicable regulations.[16]

Insofar as the plaintiff argued that other errors also require reversal of the Commissioner's decision, the plaintiff may pursue any arguments related to these claims of error in the administrative proceedings on remand.

Accordingly, under sentence four of 42 U.S.C. § 405(g), the final decision of Acting Commissioner of Social Security Carolyn W. Colvin denying the application for disability benefits filed by plaintiff Martin G. Crain is reversed, and this action will be remanded to the Commissioner for application of the proper legal standards, and reevaluation of the plaintiff's claim for disability benefits.  A separate judgment will be issued.

Baton Rouge, Louisiana, October 15, 2015.

*[signature: Stephen C. Riedlinger]*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[16] *See, Jones v. Astrue*, 2000 WL 2633793, 10-1 (N.D.Tex. July 5, 2011).